## CHARLES D. STEWART *v.* JOHN BOYD et al.

The action of supplement of the price on the part of the seller, where the overplus exceeds a twentieth part of the extent of the premises sold, is subject to the prescription of one year.

The principles as to prescription, governing ordinary contracts of sale, are applicable to public sales in general.

The United States surveys and approved township maps must control the action of surveyors appointed by the court to establish the boundary line between parties both of whom derive title under a patentee of the General Government.

APPEAL from the District Court of the Parish of Pointe Coupée, *Haralson*, J. *Louis Janin* and *A. Provosty*, for plaintiff. *R. H. Bradford* and *F. H. Farrar*, for defendants and appellants.

LAND, J.  This is an action of boundary, and its decision depends on a collateral question arising out of the facts, that the lines between the lots of land purchased by the parties were never run upon the ground by the United States Surveyor, and that the lots contained a surplus of some one hundred and thirteen acres of land.

The defendants purchased on the 27th day of July, 1850, at a Sheriff's sale, as the property of *Henry T. Williams*, the patentee of the General Government, six lots of land numbered 3, 4, 5, 6, 7 and 8, in township No. 2, ranges 7 and 8 East, fronting on Lake Depasseau, in the parish of Pointe Coupée, and declared in the act of sale to contain one thousand eight hundred and fifty-three superficial acres and twenty-seven hundredths.  And on the 30th day of March, 1854, the plaintiff purchased, at a probate sale of the effects of *Henry T. Williams*, lots 1 and 2 in the same township and range, also fronting on Lake Depasseau, contiguous to the lots previously purchased by the defendants, and declared in the act of sale to contain three hundred and ninety-three and fifty-two hundredth acres.

In the United States survey of these eight lots, (although the lines between them were not actually run), and in the approved township maps, each one of the lots was declared to contain a certain number of superficial acres, and called for a front on Lake Depasseau; and in reference to the approved township maps, the patents to *Henry T. Williams*, the common vendor of the parties, were issued.

After the parties had purchased, as above stated, it was ascertained on a re-survey of the lots, that they contained a surplus of some one hundred and thirteen acres; and they not being able to agree in respect to a division of the surplus, the plaintiff instituted this action of boundary, in which the question of title to the excess incidentally arises.

The survey, the approved township maps, and the patents issued in reference thereto, were conclusive upon *Henry T. Williams*, the common vendor of the parties, and are equally so upon them, his vendees.

The plaintiff, however, contends that the defendants are only entitled to claim the quantity of land mentioned in the act of sale to them, and that he is entitled to claim to the boundary of the defendant's land, for the reason, that the sale to him was a sale *per aversionem*.

Whether this position is tenable depends on the question, whether the defendants were entitled to the excess in the six lots purchased by them, as against their vendor, or his heirs, at the date of the purchase of the lots 1 and 2 by the plaintiff.  If the defendants were entitled to the surplus contained in the lots purchased by them, as against their vendor, at the date of the sale to the plaintiff, it cannot be contended that the latter acquired any right thereto by virtue of the probate sale to him.

The sale to the defendants was of six separate lots of land declared to contain one thousand eight hundred and fifty-three superficial acres and twenty-seven hundredths, and the surplus contained in them was something near a hundred acres, and exceeded by a very small amount one-twentieth part of the extent or quantity of land declared in the act of sale to them.  For such a case, Art. 2469 of the Civil Code has expressly provided in these words : " If, on the other hand, there exists an extent of more than what is specified in the contract, the buyer has a right, either to give the supplement of the price, or to recede from the contract, should the overplus exceed a twentieth part of the extent which is declared."  And Art. 2474 further provides : " The action of supplement of the price on the part of the seller, and that for diminution of the price, or for the

canceling of the contract on the part of the buyer, must be brought within one year from the day of the contract, otherwise it is barred."

The sale to the defendants, as stated, was in 1850, and that to the plaintiff in 1854, nearly four years after the date of the contract by which defendants acquired their title, and nearly three years after the right of the vendor to sue for a supplement of the price was barred. Under these circumstances, there can be no doubt of the right of the defendants to the surplus of the land contained in the six lots purchased by them, against their vendor, *Henry T. Williams*, and his legal heirs, or other representatives. And this right is not impaired by the fact that the sale to them was a judicial sale, because such sales are subject to the rules prescribed for public sales in general, and the latter are subject to the same rules which govern the ordinary contract of sale. C. C. Arts. 2586, 2595. It therefore follows, that the defendants are entitled to all the land embraced in lots 3, 4, 5, 6, 7 and 8, purchased from *Henry T. Williams*, as shown by the United States surveys and the approved township maps; and it also follows, that in running the boundary line between lots 2 and 3, the United States surveys and approved township maps must control the action of the Surveyor appointed by the court to establish the line between these two estates. And as lots 1 and 2 also contain a surplus, there can be no difficulty in running a boundary line which will give to both parties the full extent of their legal rights.

It is, therefore, ordered, adjudged and decreed, that the judgment be reversed, and that the cause be remanded to the lower court for further proceedings according to law, and that plaintiff and appellee pay the costs of this appeal.